1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JULIO AVILA,                          No.  2:10-cv-2857-WBS-EFB P

12                 Petitioner,

13        vs.                              FINDINGS AND RECOMMENDATIONS

14   MARTIN BITER,

15                 Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him

19   on December 3, 2007 in the Tehama County Superior Court on charges of voluntary

20   manslaughter with personal use of a firearm and participating in a criminal street gang.  He seeks

21   federal habeas relief on the following grounds: (1) his trial counsel at his first trial rendered

22   ineffective assistance; (2) the evidence is insufficient to support his conviction for participating in

23   a criminal street gang; (3) his upper term sentence on the firearm enhancement violated his Sixth

24   Amendment right to a jury trial; (4) the trial court's exclusion of evidence violated his right to due

25   process; (5) he was not provided adequate notice of the firearm enhancement allegation; (6) his

26   statements to police should have been excluded because the police failed to honor his invocation

27   of the right to remain silent; and (7) the prosecutor violated his right to a fair trial in failing to turn

28   over exculpatory evidence to the defense.  Upon careful consideration of the record and the

                                              1

applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> The People charged defendant Julio Avila with murder, with an enhancement for the personal and intentional use of a firearm causing great bodily injury, and with felony street gang terrorism. Ultimately, he was found guilty of street gang terrorism and voluntary manslaughter, and the jury found he personally used a firearm.[1]
>
> On appeal, defendant argues: (1) ineffective assistance of trial counsel for counsel's failure to object to certain opinions proffered by a gang expert; (2) insufficient evidence to support the street gang terrorism conviction; and (3) improper application of the upper term for the firearm enhancement. We affirm the judgment.
>
> **FACTUAL AND PROCEDURAL BACKGROUND[2]**
>
> On or about the evening of November 4, 2005, defendant's truck broke down on his way to visit a friend. Defendant decided to walk the rest of the way to his destination, and, en route, he was attacked by three or four members of the Sureño gang near the trailer home of a friend. Following the altercation, defendant went to a nearby acquaintance's home and obtained a gun. He then walked back to his truck with the gun, where he saw the truck's windows broken. Defendant left his truck to walk to a different friend's house, and as he was walking, he saw a car drive past him, stop, and then come back toward him. Seeing in the car Sureño gang members who had assaulted him earlier in the evening, defendant fired the gun twice at the car. One of the bullets struck and killed a passenger in the car.

---

[1]   Defendant had two trials. His first jury found him guilty of street gang terrorism but deadlocked on the murder charge and its enhancement. The trial court accepted the guilty verdict on the street gang terrorism charge and declared a mistrial as to the murder charge. At a second trial on the murder charge and its enhancement, a second jury found defendant guilty of voluntary manslaughter and found true the personal use of a firearm enhancement allegation.

[2]   Because the substantive issues raised on appeal stem from the street gang terrorism charge, the substantive facts of the incident are taken from the first trial, which resolved that charge. Facts related to the appeal on sentencing are taken from the end of the second trial when the trial court pronounced defendant's sentence.

Defendant was charged with murder, enhanced with the personal and intentional use of a firearm causing great bodily injury, and with street gang terrorism.

During the first trial, the prosecution called Eric Clay, an investigator in the Tehama County District Attorney's Office, as an expert on gangs. Investigator Clay testified to the nature and culture of gangs generally and to the history of the feud between the Norteño and Sureño gangs. He also testified that he believed defendant was a member of the Norteños at the time of trial and at the time of the shooting, contrary to defendant's assertions. He further testified he believed this shooting was gang related. As a basis for his conclusions, he testified defendant was wearing red shoelaces, an indication of Norteño affiliation, at the time of the shooting. He also testified he had reports from several police officers that defendant had admitted to membership in the Norteños in 2003 and 2005. He further testified he had seen additional reports that defendant had committed two crimes with another Norteño gang member. Additionally, he testified he had seen multiple letters from defendant indicating defendant's affiliation with the Norteños, including one that used the phrase "'us northern Hispanics,'" which he asserted was another means of referring to the Norteños. He also claimed defendant's tattoos and his moniker were indications of membership in the Norteño gang.

At trial, defendant admitted to having gang tattoos and writing the letter dated March 5, 2006, which referred to "'us northern Hispanics.'" However, he claimed he was not a member of a gang at the time of the shooting or at the time of trial.

The trial court sentenced defendant to 11 years for the voluntary manslaughter charge and the upper term of 10 years for the personal use of a firearm enhancement, justifying the use of the upper term by the gang-related nature of the crime. The court stayed the two-year sentence for the felony street gang conviction.

*People v. Avila*, No. C058108, 2009 WL 3069575 (Cal.App.3d Dist. Sept. 28, 2009), at **1-2.

After the California Court of Appeal affirmed petitioner's judgment of conviction, he filed a petition for review in the California Supreme Court. That petition was summarily denied. Resp't's Lodg. Doc. 6.

On April 7, 2011, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. Resp't's Lodg. Doc. 7. On January 4, 2012, that petition was also summarily denied. Resp't's Lodg. Doc. 8.

/////

/////

/////

3

1    **II. Analysis**

2         **A. Standards of Review Applicable to Habeas Corpus Claims**

3         An application for a writ of habeas corpus by a person in custody under a judgment of a

4    state court can be granted only for violations of the Constitution or laws of the United States.  28

5    U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

6    application of state law.  *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*,

7    502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

8         Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

9    corpus relief:

10        An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be
     granted with respect to any claim that was adjudicated on the merits

11   in State court proceedings unless the adjudication of the claim—

12        (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as

13   determined by the Supreme Court of the United States; or

14        (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in

15   the State court proceeding.

16   For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

17   holdings of the United States Supreme Court at the time of the state court decision.  *Stanley v.*

18   *Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06

19   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

20   clearly established and whether a state court applied that law unreasonably."  *Stanley*, 633 F.3d at

21   859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

22        A state court decision is "contrary to" clearly established federal law if it applies a rule

23   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

24   precedent on "materially indistinguishable" facts.  *Price v. Vincent*, 538 U.S. 634, 640 (2003).

25   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

26   writ if the state court identifies the correct governing legal principle from the Supreme Court's

27   decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *Lockyer v.*

28   *Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

4

1   (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that

2   court concludes in its independent judgment that the relevant state-court decision applied clearly

3   established federal law erroneously or incorrectly.  Rather, that application must also be

4   unreasonable." *Williams*, 529 U.S. at 412; *accord Schriro v. Landrigan*, 550 U.S. 465, 473

5   (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

6   review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

7   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

8   'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

9   *Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

10  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

11  must show that the state court's ruling on the claim being presented in federal court was so

12  lacking in justification that there was an error well understood and comprehended in existing law

13  beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

14       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

15  court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

16  527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

17  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

18  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

19  considering de novo the constitutional issues raised.").

20       The court looks to the last reasoned state court decision as the basis for the state court

21  judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).  If

22  the last reasoned state court decision adopts or substantially incorporates the reasoning from a

23  previous state court decision, this court may consider both decisions to ascertain the reasoning of

24  the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When

25  a federal claim has been presented to a state court and the state court has denied relief, it may be

26  presumed that the state court adjudicated the claim on the merits in the absence of any indication

27  or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85.  This

28  presumption may be overcome by a showing "there is reason to think some other explanation for

5

1   the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

2   803 (1991)).  Similarly, when a state court decision on a petitioner's claims rejects some claims

3   but does not expressly address a federal claim, a federal habeas court must presume, subject to

4   rebuttal, that the federal claim was adjudicated on the merits.  *Johnson v. Williams*, 133 S. Ct.

5   1088, 1091 (2013).

6          Where the state court reaches a decision on the merits but provides no reasoning to

7   support its conclusion, a federal habeas court independently reviews the record to determine

8   whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

9   *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

10  review of the constitutional issue, but rather, the only method by which we can determine whether

11  a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.  Where no

12  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

13  reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

14         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

15  *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze

16  just what the state court did when it issued a summary denial, the federal court must review the

17  state court record to determine whether there was any "reasonable basis for the state court to deny

18  relief." *Richter*, 131 S. Ct. at 784.  This court "must determine what arguments or theories . . .

19  could have supported, the state court's decision; and then it must ask whether it is possible

20  fairminded jurists could disagree that those arguments or theories are inconsistent with the

21  holding in a prior decision of [the Supreme] Court." *Id.* at 786.  The petitioner bears "the burden

22  to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v.*

23  *Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

24         When it is clear, however, that a state court has not reached the merits of a petitioner's

25  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

26  habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

27  F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

28  /////

B. **Petitioner's Claims**

   1. <u>**Ineffective Assistance of Trial Counsel/ Conflict of Interest**</u>

Petitioner raises several claims of ineffective assistance of trial counsel at his first trial. After setting forth the applicable legal standards, the court will evaluate these claims in turn below.

a.       <u>**Applicable Legal Standards**</u>

The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 131 S.Ct. at 789.  Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the
/////

1   outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable."

2   *Richter*, 131 S.Ct. at 792.

3       Defense counsel has a "duty to make reasonable investigations or to make a reasonable

4   decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Counsel

5   must, "at a minimum, conduct a reasonable investigation enabling him to make informed

6   decisions about how best to represent his client." *Hendricks v. Calderon*, 70 F.3d 1032, 1035 (9th

7   Cir. 1995) (quoting *Sanders*, 21 F.3d at 1456 (internal citation and quotations omitted)).

8       Under AEDPA, "[t]he pivotal question is whether the state court's application of the

9   Strickland standard was unreasonable." *Id.* at 785.  "[B]ecause the *Strickland* standard is a

10  general standard, a state court has even more latitude to reasonably determine that a defendant has

11  not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

12                    **b.    <u>Failure to Object to Testimony of Gang Expert</u>**

13      Petitioner claims that his trial counsel rendered ineffective assistance in failing to object to

14  certain portions of the testimony of a gang expert.  ECF No. 35 at 17, 21-22.  The California

15  Court of Appeal rejected this claim on direct appeal.  The court explained the background to the

16  claim and its reasoning thereon, as follows:

17              **The Gang Expert's Testimony**

18              Defendant contends his counsel was ineffective for failing to object
                to what he claims were two instances of improper expert witness
19              testimony by Investigator Clay: (1) Clay did not believe defendant's
                assertion he was no longer in a gang at the time of the shooting and
20              the reasons for Clay's opinion; and (2) Clay believed the shooting
                was gang related and the reasons he came to that conclusion.
21              Below, we detail the full excerpts of the testimony with which
                defendant takes issue.
22
                **A**
23
                **The Gang Expert's Statement He Did Not Believe Defendant's**
24              **Assertion He Was No Longer In A Gang**

25              Defendant contends his counsel was ineffective for not objecting
                when the prosecutor asked the expert if he believed defendant's
26              assertion he was no longer a gang member and the expert testified
                that he did not find that statement accurate and then explained
27              reasons why.

28  /////

                                        8

The exchange to which defendant objects was as follows:

"[PROSECUTOR:] [B]ased on your expertise and everything that you presented, do you believe his assertion that he was no longer involved in the gang?

"[EXPERT CLAY:] No, I don't believe that's accurate.

"[THE PROSECUTOR:] Why do you not believe that?

"[EXPERT CLAY:] Well, I believe it not to be true because of all of his activity.  He's still wearing the gang colors the night of the event.  The event involved rival gang members.  There has been information since the incident where he's been still involved in gang activity.

"Gang members know that they get in more trouble being a gang member committing a crime, so they try to downplay to law enforcement their membership in that gang.  But their actions speak louder than their words when they tell us they are not gang members anymore."

The problem with this testimony was twofold.  One, the expert gave an opinion on whether defendant was accurate, i.e., truthful, in his testimony about whether he was involved in a gang.  Questions about a defendant's veracity are improper subjects for expert witness testimony.  (*People v. Zambrano* (2004) 124 Cal.App.4th 228, 240-241.)  Two, the expert gave an opinion on what he believed to be defendant's thought process, i.e., gang members try to downplay their involvement because they know they can get in trouble when they commit crimes as gang members.  Questions about a defendant's knowledge or intent are not the proper province of expert witness testimony.  (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 658; *see People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1550-1551.)

**B**

**The Expert's Statement He Believed The Incident Was Gang Related**

Defendant contends counsel should have objected to the expert's testimony the shooting was gang related and the reasons he came to that conclusion.  The testimony at issue was as follows:

"[THE PROSECUTOR:] Now, in your expert opinion do you believe the shooting of Alvaro Castillo involving the Defendant or caused by the Defendant was gang-related?

"[EXPERT CLAY:] Yes.

"[THE PROSECUTOR:] And how do you come to that conclusion?

"[EXPERT CLAY:] Well, first and probably the simplest is he was a rival gang member.  The everyday life of a gang member is to hurt, kill, oppose the rival gang.  The mere fact that these other

individuals were rival gang members means that any assault against them was motivated because of the gang on both sides.

"Additionally, there's information that Mr. Avila had been having a conflict with Victor Martinez over at least a few weeks.  There is also information that Mr. Avila's vehicle was vandalized, and he probably thought it was this group of individuals [who] did it.

"Therefore, because of an ongoing conflict between them, the fact that they are rival gang members, and that it would have been retaliation for what he thought, whether it was true or not, what he thought was vandalism to his vehicle by rival gang members, all of that would have been around gang motivation because of them being rival gang members and the retaliation and so on.

"If he did not retaliate or did not do something to this group of individuals, he would have lost respect within his own gang.  And by doing this, it's just the opposite.  He gained respect within his own gang."

There are at least two problems with this testimony.  One, it again involves defendant's thought process, i.e., assaults are all motivated by gang membership.  And two, the questioning asked the expert to determine if the facts at hand suggested gang-related activity, rather than providing the expert a hypothetical set of facts, and then asking for the expert's opinion, as the law requires.  (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1208-1209; *see People v. Gardeley* (1996) 14 Cal.4th 605, 619.)

**C**

**Ineffective Assistance Of Counsel**

Given these improper questions on direct appeal with a silent record, we must determine whether counsel was deficient for failing to object and whether any deficient performance was prejudicial.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

Defendant fails on both prongs.  First, on a silent record, we cannot say counsel's performance in failing to object was deficient because he may have had legitimate tactical reasons for his failure to do so.  For example, he may not have wanted to highlight the objectionable testimony to the jury so he well may have decided it was not worth objecting.  Furthermore, as to the difference between presenting the facts as a hypothetical and referring to the facts presented to the jury, counsel legitimately may have decided not to object because the expert here identified the underlying reasons for concluding the shooting was gang related.  And by identifying the bases for his opinion, the jurors would have been able to discount his conclusion if they believed any of the underlying information untrue.

10

Second, even if counsel's failure to object was deficient, it was not prejudicial because the prosecution provided a great deal of other evidence from which the jury could have found defendant was an active member of the Norteños gang at the time of the shooting and the shooting was gang related.  The prosecutor's evidence included the expert's testimony that defendant was a member of the Norteños.  To support his conclusion, the expert referenced a letter from defendant confiscated by the Tehama County Probation Department where he sketched symbols meaning "Norteño for Life."    The expert also testified defendant had admitted membership in the Norteños to the police in 2003 and in 2005.  The expert witness had further reports defendant had committed two other crimes with another member of the Norteños.

There was further testimony defendant was wearing red shoelaces at the time of his arrest, which the expert testified to be a common signifier of membership in the Norteños.  The prosecution also entered into evidence a letter written several months following the incident, where defendant identified with "'us northern Hispanics,'" and the expert witness testified "northern Hispanics" is another term for Norteños.  Furthermore, defendant had multiple tattoos the expert witness identified as markers of membership in the Norteños.  Finally, the victims of the shooting were known members of the Sureños, a rival gang to the Norteños, between whom there had been a history of gang violence.  These pieces of evidence provide the basis from which a rational trier of fact could deduce defendant was an active participant in the Norteños at the time of the shooting and the shooting was gang related, regardless of whether the expert opinion evidence defendant complains about on appeal was presented in the manner it was.

*Avila*, 2009 WL 3059575, at **2-4.

The California Court of Appeal's conclusion that petitioner's trial counsel did not render deficient performance in declining to object to the testimony of the gang expert is not unreasonable.  On habeas review, a reviewing court must give attorneys the benefit of the doubt after considering "the range of possible reasons [defense] counsel may have had for proceeding as they did."  *Pinholster*, 131 S.Ct. at 1407.  As explained by the state appellate court, petitioner's trial counsel may have had tactical reasons for failing to object to testimony by the expert about whether petitioner was a gang member, such as a desire to avoid highlighting unfavorable evidence.

Nor has petitioner demonstrated that his trial counsel's performance resulted in prejudice.  Petitioner argues that the gang expert's opinion constituted the only significant evidence that he was a member of a street gang at the time of the offense.  ECF No. 35 at 22.  However, as

1   explained by the California Court of Appeal, there was substantial circumstantial evidence that

2   petitioner was still involved with the Nortenos street gang, such as his clothing, tattoos, letters,

3   and statements to other people.  Given this evidence, there is no reasonable probability that, but

4   for counsel's failure to object to the expert's testimony, the result of the proceedings would have

5   been different.

6           The decision of the California Court of Appeal denying this claim of ineffective assistance

7   of counsel is not contrary to or an unreasonable application of *Strickland.*  Accordingly, petitioner

8   is not entitled to federal habeas relief.

9                  **c.      Failure to Conduct Sufficient Investigation and Communicate with**

10                          **Petitioner**

11          Petitioner also claims that his trial counsel rendered ineffective assistance in failing to

12  sufficiently communicate with him, confer with him on trial preparation, or conduct adequate

13  investigation.  ECF No. 35 at 33-34, 64-66.  The California Supreme Court summarily denied

14  this claim, which was raised for the first time in a habeas petition filed in that court.  Resp't's

15  Lodg. Docs. 7, 8, lodged July 1, 2013.  Under these circumstances, the reasoned decision of the

16  trial court is the decision this court must consider under AEDPA review.  *Hurles v. Ryan,* 706

17  F.3d 1021, 1046 n.4 (9th Cir. 2013) ("The state trial court's decision is the last reasoned decision

18  on this claim, and therefore the one that we must consider under AEDPA review").

19          The background to this claim is as follows.  Petitioner maintained at trial that Sureno

20  member Victor Martinez, who was a passenger in the victim's vehicle at the time of the shooting,

21  was jealous of petitioner because of his supposed relationship with Martinez's girlfriend.  ECF

22  No. 35 at 61.  Petitioner states that Martinez and several other Surenos had repeatedly assaulted

23  him, including at a trailer park earlier on the day of the shooting; had vandalized his vehicle; and

24  were pursuing his vehicle and "initiating further hostilities" against him at the time of the

25  shooting.  *Id.*  He claims that his trial counsel failed to investigate these facts, thereby failing to

26  discover evidence which would have supported his defense that he shot at the victim's car in self-

27  defense.  *Id.* at 65.

28  /////

                                        12

1    Petitioner directs the court's attention to his declaration and the declaration of his counsel

2    at the second trial, which were filed in support of a motion for new trial.  In his own declaration,

3    petitioner stated that his trial counsel consulted with him on only three occasions prior to going to

4    trial, and that petitioner "was not aware" that any pre-trial investigation was conducted by his first

5    trial counsel.  Clerk's Transcript on Appeal (CT) at 181.  Petitioner's second trial counsel

6    declared that petitioner's former counsel did not appear to have engaged in any investigation into

7    the recent hostilities involving petitioner, Martinez, and the other Surenos, which would have

8    supported petitioner's defense that he shot the victim in self-defense after having been attacked

9    and stalked prior to the shooting.  *Id.* at 184.  Counsel also declares that he conducted his own

10   investigation into these matters and was able to find a witness who corroborated petitioner's story

11   that he had been assaulted by Mr. Martinez and other Surenos at the trailer park on the day of the

12   shooting in this case.  *Id. See also id.* at 185, 192, 194.  Specifically, defense counsel's

13   investigator was able to locate a woman who lived at the trailer park where the altercation

14   between petitioner, Martinez, and other Surenos allegedly occurred.  She informed the

15   investigator that she remembered an "incident" that took place "in November of 2005," in which

16   she heard a group of men yelling, screaming, and running through her yard.  *Id.* at 192, 194.  She

17   stated the men were "starting a big fight" and that she turned on her porch light and yelled at them

18   to "get out of here."  *Id.*  She did not see any of the men involved.  *Id.*

19   Petitioner argues that the prosecutor was able to "exploit" defense counsel's failure to

20   corroborate his story that he was assaulted by Martinez and others on the day of the shooting by

21   pointing out in closing argument that there was no evidence of a physical altercation between

22   petitioner and Mr. Martinez, except petitioner's own self-serving testimony.  *See* CT at 189.

23   Petitioner argues, "there is no indication that any key witnesses were interviewed in this matter

24   nor even an investigator employed."  ECF No. 35 at 33.

25   Petitioner also contends that in light of the fact that the prosecution intended to present a

26   gang expert, his trial counsel should have obtained "his own expert to rebut or refute."  *Id.* at 34.

27   Finally, petitioner argues that his second trial counsel was unable to gather "critical evidence"

28   because of first counsel's failure to obtain exculpatory evidence in a timely manner.  *Id.* at 65-66.

13

1    Petitioner raised these arguments in the trial court in connection with his motion for new

2    trial.  CT at 177-210.  The trial court denied the motion, ruling as follows:

3            The Motion for new Trial is denied.  The Court, however, does not
             preclude the Defendant from making a Motion for New Trial, at
4            least should the Defendant be acquitted of the underlying homicide
             offense.

5
             As the Court understands the Defendant's theory is that he would
6            be not guilty of the gang allegation, because if he is not guilty of the
             homicide, he can't have committed a crime for the purpose of
7            enhancing the gang or participating in gang activity.  That argument
             may be well taken if, in fact, he is acquitted of the homicide.  Then
8            the Court will reconsider whether or not to grant a new trial on the
             gang allegations.

9

10   Reporter's Transcript on Appeal (RT) at 514.

11   As set forth above, petitioner contends that his trial counsel failed to conduct sufficient

12   investigation into the history of ongoing violence between himself and the Surenos, including Mr.

13   Martinez.  He also argues that his trial counsel failed to interview "key" witnesses, such as the

14   resident of the trailer park, described above.  However, petitioner has failed to demonstrate that

15   the result of the proceedings would have been different had trial counsel undertaken the

16   investigation that petitioner suggests.  Petitioner was convicted only of the gang enhancement

17   allegation after his first trial – the jury was unable to render a verdict on the murder charge.

18   There is no reasonable possibility petitioner would have achieved a better result if his trial

19   counsel had presented evidence that petitioner and the passengers in the victim's vehicle had a

20   history of violence, or if he had presented the somewhat vague testimony from the resident of the

21   trailer park.  This evidence had little or no bearing on whether petitioner was a member of a gang

22   at the time of the shooting.  The court also notes that even after the evidence was presented at the

23   second trial, petitioner was convicted of voluntary manslaughter.

24   Petitioner has also failed to show that his first trial counsel's failure to meet with him

25   more often affected the outcome of the trial.  *See Payton v. Woodford,* 258 F.3d 905, 922 (9th Cir.

26   2001) (*overruled on other grounds* in *Payton v. Woodford,* 299 F.3d 815 (9th Cir. 2002)

27   (although petitioner complained that his trial counsel conferred with him for only 8.1 hours, no

28   prejudice was shown because petitioner "points to nothing that would have happened differently

14

1    had [counsel] and he spent more time together").  Without a showing that the outcome of the trial

2    would have been different if trial counsel had met with him on more occasions, petitioner fails to

3    establish either deficient performance or prejudice.

4         For the foregoing reasons, petitioner is not entitled to federal habeas relief on these claims

5    of ineffective assistance of trial counsel.

6              **d.      Conflict of Interest**

7         Petitioner claims that his first trial counsel operated under a conflict of interest because he

8    represented Mr. Martinez in three prior criminal cases several years before petitioner's trial.  ECF

9    No. 35 at 28-29, 33-34, 61-68.  *See also* CT at 185.  Petitioner informs the court that he had no

10   prior knowledge that his trial counsel had represented Martinez in the past.  *Id.*

11        Petitioner's second counsel raised this issue in his motion for new trial.  He argued that

12   once counsel became aware of Mr. Martinez's role in this matter and the fact that Martinez would

13   be testifying as a prosecution witness, counsel "should have immediately moved for withdrawal."

14   CT at 201-02.  He argued, "how Mr. Avila's trial counsel could have been expected to argue self-

15   defense when his own former-client would be left 'holding the bag' if successful appears to be

16   conflict of rare dimension."  *Id.* at 205.

17        Petitioner's first trial counsel provided a declaration in support of the prosecution's

18   response to petitioner's motion for new trial.  Therein, counsel stated that: (1) prior to and during

19   petitioner's trial, he was unaware that he had previously represented Mr. Martinez in 2003, even

20   when he saw Mr. Martinez on the witness stand; (2) he did not obtain any confidential

21   information from Mr. Martinez which "came into play in the trial;" and (3) his representation of

22   petitioner was not "influenced in any fashion" by his prior representation of Martinez. [3]  *Id.* at

23   412.

24   /////

25   /////

26

27   _____
     [3]   The state court record reflects that Mr. Martinez was called by the prosecutor to the
     witness stand but answered "no comment" to all questions.  RT at 205-05.  Petitioner's trial
28   counsel declined to ask any cross-examination questions.  *Id.* at 205.

When ruling on petitioner's motion for new trial, the trial judge made the following remarks:

> First regarding the conflict of counsel, I think one of the things that is commonly misunderstood is that there is no hard and fast rule that one attorney cannot represent a witness, even an involved witness, and then later represent a defendant.   Particularly we probably are sensitive to that in a small county such as this because it is not unusual that that occurs.
>
> The prohibition is whether the first attorney has gained confidential information to be used against the second client who that attorney represents.
>
> This [Mr. Martinez's] conviction was in 2003.  The conviction was for drug offenses.  There is no suggestion that [petitioner's first trial counsel] gained any confidential information that could be used against the witness in this proceeding; and that therefore, it would somehow preclude him from representing Mr. Avila.  Absent such an indication, it is not grounds for the Court to grant a new trial on that basis.
>
> It is at least worth noting, and I note that there is some discussion in one of the cases that was cited, it was a Supreme Court case from about 1972, something like that, but it always strikes me as a bit odd that somehow you would have error because you gained confidential information that you can't use, because if the information is truly confidential, nobody else could use it, either.  And how that would create prejudice, I'm not sure.   It simply means that nobody could use that information, understanding  . . . that the rule is against using confidential information.  Nor do I see any actual prejudice to the Defendant because of Mr. McIver's representation of Mr. Martinez at some prior date.
>
> And although it is not necessarily a preclusion to a conflict, the fact the testimony [sic] of Mr. Martinez certainly suggests to the Court that there was no actual prejudice.

RT at 512-13.

Petitioner renewed his motion for new trial after the conclusion of his second trial.  CT at 992.  He again alleged that he did not receive a fair trial because his first trial counsel was operating under a conflict of interest.  *Id.* at 995-1002.  The trial court again denied the motion, ruling as follows:

> First regarding the motion as it pertains to the 186.22, essentially the Court has already ruled on that motion once.  The Court did not find it had sufficient merit originally, and does not find it now has sufficient merit.

16

The conflict argument seems to take part of the law regarding conflicts and ignore the other.  The issue is not whether or not an attorney represented someone else in the past; the issue is whether or not they obtained confidential information that they cannot use with the subsequent client.

As I have expressed before, at least in substance, I have problems with not the law, but the reasoning of such an argument.  It never seemed to make much sense to me what difference it made if you couldn't use confidential information.  The remedy for that is you appoint another attorney.  Well, the other attorney isn't going to be able to use the confidential information either, so it's a little difficult to see what the prejudice is when neither the current attorney or the new attorney can use that confidential information.

That is not the state of the law.  The state of the law is that it is a conflict, and that the attorney must disqualify himself if he has confidential information.

The problem in this case is there is no evidence that [former counsel] had any confidential information, nor does it particularly seem reasonable that he would have such information.  The prior representation seemed to be totally different, different offenses.  There didn't appear to be any relationship with this case.  And what confidential information he may have had certainly is not demonstrated by the motion.

In any case, the Court's prior ruling still appears to be appropriate, and the Court continues that ruling.

RT at 1270-71.

The California Supreme Court summarily denied petitioner's claims of ineffective assistance of counsel, which were raised for the first time in a habeas petition filed in that court. Resp't's Lodg. Docs. 7, 8, lodged July 1, 2013.  Under these circumstances, the reasoned decision of the trial court is the decision this court must consider under AEDPA review.  *Hurles*, 706 F.3d at 1046 n.4.

It is well established that the right to effective assistance of counsel carries with it "a correlative right to representation that is free from conflicts of interest."  *Wood v. Georgia*, 450 U.S. 261, 271 (1981).  *See also Campbell v. Rice*, 302 F.3d 892, 897 (9th Cir. 2002).  Conflicts of interest broadly embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or by his own interests.  *See generally* ABA, Model Rules Prof. Conduct, Rule 1.7 and commentary (1983).  Conflicts may occur in various factual settings.  For example, conflicts may arise in

17

1  circumstances in which one attorney represents more than one defendant in the same proceeding.

2  *See, e.g., Holloway v. Arkansas*, 435 U.S. 475, 481-91 (1978).  Conflicts may also arise in

3  situations in which an attorney represents a defendant in a criminal matter and currently has or

4  formerly had an attorney-client relationship with a person who is a witness in that matter.  *See,*

5  *e.g., Houston v. Schomig*, 533 F.3d 1076, 1081 (9th Cir. 2008); *Thomas v. Municipal Court*, 878

6  F.2d 285 (9th Cir. 1989).  The rule prohibiting counsel from representing conflicting interests

7  serves to protect confidential information obtained during the course of an earlier representation,

8  ensure undivided attorney loyalty, and guard against infringement of the right to cross-

9  examination.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1452-53 (9th Cir. 1994); *Fitzpatrick v.*

10  *McCormick*, 869 F.2d 1247, 1251 (9th Cir. 1989); *United States v. Allen*, 831 F.2d 1487, 1497

11  (9th Cir. 1987); *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).  Courts "generally presume

12  that the lawyer is fully conscious of the overarching duty of complete loyalty to his or her client."

13  *Burger v. Kemp*, 483 U.S. 776, 784 (1987).

14         In order to establish an ineffective assistance of counsel claim based on a conflict of

15  interest, a petitioner must show that an actual conflict of interest adversely affected his lawyer's

16  performance.  *Mickens v. Taylor*, 535 U.S. 162, 174 (2002); *Cuyler v. Sullivan*, 446 U.S. 335,

17  348-350 (1980); *Lewis v. Mayle*, 391 F.3d 989, 997 (9th Cir. 2004); *Mannhalt v Reed*, 847 F.2d

18  576, 582 (9th Cir. 1988) (adverse effects found where a conflict "may have impacted the manner

19  of the cross-examination" by the attorney).  The existence of an actual conflict "cannot be

20  governed solely by the perceptions of the attorney; rather, the court itself must examine the record

21  to discern whether the attorney's behavior seems to have been influenced by the suggested

22  conflict."  *Sanders*, 21 F.3d at 1452.  The mere possibility that an attorney had a conflict of

23  interest is insufficient to entitle a petitioner to habeas relief.  Rather, the petitioner must show

24  that:  (1) his attorney actively represented conflicting interests, and (2) the conflict "actually

25  affected" the adequacy of the attorney's representation.  *Cuyler*, 446 U.S. at 349-50.  *See also*

26  *Campbell*, 302 F.3d at 897; *Lockhart*, 250 F.3d at 1229.  A defendant "need not demonstrate

27  prejudice in order to obtain relief."  *Cuyler*, at 349-50.  *See also Delgado v. Lewis*, 223 F.3d 976,

28  981 (9th Cir. 2000).  Nonetheless, a defendant must show that "the attorney's behavior seems to

1   have been influenced" by the conflict." *Lockhart*, 250 F.3d at 1231 (quoting Sanders, 21 F.3d at

2   1452).

3          The presence of an alleged multiple representation to which no objection was made at the

4   time, standing alone, does not establish a Sixth Amendment actual conflict.  *Mickens*, 535 U.S. at

5   168–69.  A petitioner may not establish a Sixth Amendment violation simply by demonstrating

6   that his trial counsel represented a current witness in a former proceeding, on the premise that the

7   mere fact of the prior multiple representation establishes in and of itself that counsel had divided

8   loyalties.  He instead must demonstrate an actual—as opposed to theoretical—division of

9   loyalties that adversely affected counsel's performance.  Petitioner has failed to do that here.

10          Petitioner argues that his trial counsel's previous representation of Mr. Martinez

11   constituted a conflict of interest because counsel's loyalty to Martinez would have prevented him

12   from arguing that petitioner shot the victim in self-defense.  He argues that any such argument

13   might have put Martinez, counsel's former client, at risk of criminal liability.  He contends that

14   the existence of a conflict is evidenced by the fact that counsel appeared to rely more heavily

15   during closing argument on a defense of "imperfect self-defense" than on a defense of "perfect

16   self-defense."  Petitioner does not point to any particular part of counsel's closing argument to

17   support this contention.  However, after a review of the record as a whole, including the closing

18   argument given by petitioner's first trial counsel, this court finds no indication that trial counsel's

19   approach was influenced by his prior representation of Mr. Martinez.

20          In any event, as pointed out by respondent, the United States Supreme Court has not

21   decided whether the *Sullivan* rule applies to conflicts in successive representation.  *Mickens*, 535

22   U.S. at 171 ("In resolving this case on the grounds on which it was presented to us, we do not rule

23   upon the need for the *Sullivan* prophylaxis in cases of successive representation.  Whether

24   *Sullivan* should be extended to such cases remains, as far as the jurisprudence of this Court is

25   concerned, an open question.").  Accordingly, the decision of the California Court of Appeal that

26   there was no constitutional violation resulting from trial counsel's former representation of Mr.

27   Martinez is not contrary to or an unreasonable application of United States Supreme Court

28   authority.  *See Montoya v. Lytle*, 53 Fed. App'x. 496, 498 (10th Cir. Nov. 20, 2002) (unpublished

op.) (*Sullivan* standard has never been extended by the Supreme Court to cases involving successive, rather than concurrent, representation; therefore, no clearly established federal law exists that would require reversal of a conviction on a mere showing of a conflict of interest involving successive representation).

For the foregoing reasons, petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel.

### 2. Insufficient Evidence

In his next ground for relief, petitioner claims that the evidence was insufficient to support the jury's findings that he was active gang member at the time of the crime and that the shooting was gang related.  ECF No. 35 at 23-25.

The California Court of Appeal rejected these arguments, reasoning as follows:

> **The Evidence Was Sufficient To Support The Street Gang Terrorism Conviction**
>
> Defendant argues the evidence was insufficient to support two essential elements of the street gang terrorism charge: his active participation in the gang at the time of the shooting and that the shooting was itself gang related.  This court reviews a claim of insufficiency of the evidence to determine "whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt."  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)  "The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)
>
> We disagree with defendant's contentions.  There is overwhelming evidence defendant was an active gang participant at the time of the shooting and the shooting was a gang-related activity such that a rational trier of fact could have found these elements true beyond a reasonable doubt.  Defendant is correct in asserting that a street gang terrorism conviction requires active participation in the gang rather than passive membership.  (*People v. Castaneda* (2000) 23 Cal.4th 743, 747-752.)  However, the prosecutor provided significant evidence defendant was more than a passive member, which we have recounted already.
>
> Defendant attempted to refute this evidence of active participation in the Norteños by claiming he had previously associated with them but had not been at the time of the shooting or at the time of trial.  However, the letter referring to "'us northern Hispanics'" was dated March 5, 2006, postdating the shooting by several months.  Further, the red shoelaces were worn the day following the shooting.

20

> There is also overwhelming evidence defendant's activity was gang-related.  First, a gang expert testified this was a gang-related activity and grounded that conclusion in facts largely undisputed by defendant.  Additionally, the prosecution produced testimony that defendant was a member of the Norteños gang, that the victims in the shooting were members of the Sureños, a rival gang, and that the Norteños and Sureños were in a gang war.  These facts provide a sufficient basis for a rational trier of fact to deduce the shooting was a part of the gang war between the Sureños and Norteños and was therefore gang-related activity.

*Avila*, 2009 WL 3069575, at **4-5.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, ___ U.S. ___, 132 S.Ct. 2, *4 (2011).

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011).  "Jackson leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) (per curiam) (citation omitted).  "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

 "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

21

1   *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant relief, the federal habeas

2   court must find that the decision of the state court rejecting an insufficiency of the evidence claim

3   reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case.

4   *Ngo*, 651 F.3d at 1115; *Juan H.*, 408 F.3d at 1275 & n.13. Thus, when a federal habeas court

5   assesses a sufficiency of the evidence challenge to a state court conviction under AEDPA, "there

6   is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957,

7   964 (9th Cir. 2011). The federal habeas court determines sufficiency of the evidence in reference

8   to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at

9   324 n.16; *Chein*, 373 F.3d at 983.

10   After reviewing the state court record in the light most favorable to the jury's verdict, and

11   for the reasons expressed by the California Court of Appeal, this court concludes that there was

12   sufficient evidence introduced at petitioner's trial to support the jury findings that petitioner was

13   an active gang member at the time of the crime and that the shooting was gang related. This is

14   true even though there was other trial evidence which supported petitioner's version of the events.

15   The question in this federal habeas action is not whether there was evidence from which the jury

16   could have found for the petitioner on these issues. Rather, in order to obtain federal habeas relief

17   on this claim, petitioner must demonstrate that the state courts' denial of relief with respect to his

18   insufficiency of the evidence arguments was an objectively unreasonable application of the

19   decisions in Jackson and *Winship* to the facts of this case. Petitioner has failed to make this

20   showing, or to overcome the deference due to the state court's findings of fact and its analysis of

21   this claim. Accordingly, he is not entitled to federal habeas relief on his claim of insufficient

22   evidence.

23   **3. <u>Sixth Amendment Right to Jury Trial</u>**

24   Petitioner claims that the trial court violated his Sixth Amendment right to trial by jury

25   when it imposed the upper term sentence on the firearm enhancement allegation. ECF No. 35 at

26   26. He notes that while his first jury found he was an active gang participant and was acting on

27   behalf of a gang when he shot the victim, "this gang finding was not made by the second jury."

28   *Id.*

1      The California Court of Appeal denied this claim, reasoning as follows:

2           **The Sentence Was Appropriate**

3           Relying on *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147
            L.Ed.2d 435], defendant argues the trial judge improperly sentenced
4           him to the upper term on the personal use of a firearm enhancement
            to the voluntary manslaughter conviction.   He argues this
5           imposition of the upper term was invalid because the trial court
            based its decision on the conviction for gang-related terrorism from
6           the first trial, which he argues was insufficiently supported.
            Because we conclude the evidence was sufficient to support the
7           gang-related terrorism conviction, there is an adequate basis under
            *Apprendi* to support the enhancement.  The People are correct that
8           this one aggravating circumstance, proved to a jury beyond a
            reasonable doubt, is sufficient to sustain the upper term. (*See
9           People v. Black* (2007) 41 Cal.4th 799, 813.)

10     *Avila*, 2009 WL 3069575, at *5.

11          A criminal defendant is entitled to a trial by jury and to have every element necessary to

12     sustain his conviction proven by the state beyond a reasonable doubt.  U.S. CONST. amends. V,

13     VI, XIV.  In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the United States Supreme Court

14     held that the Due Process Clause of the Fourteenth Amendment requires any fact other than a

15     prior conviction that "increases the penalty for a crime beyond the prescribed statutory

16     maximum" to be "submitted to a jury and proved beyond a reasonable doubt."  In *Cunningham v.*

17     *California*, 549 U.S. 270 (2007), the Supreme Court held that California's Determinate

18     Sentencing Law (DSL) violates a defendant's right to a jury trial to the extent it permits a trial

19     court to impose an upper term based on facts found by the court rather than by a jury.  The U.S.

20     Court of Appeals for the Ninth Circuit subsequently held that *Cunningham* may be applied

21     retroactively on collateral review.  *Butler v. Curry*, 528 F.3d at 639.  As noted by the California

22     Court of Appeal, a single aggravating factor is a sufficient basis for the imposition of the upper

23     term.  *People v. Black*, 41 Cal.4th 799, 813-15 (2007).

24          As noted by the California Court of Appeal, and conceded by petitioner, the jury at his

25     first trial found beyond a reasonable doubt that he was an active gang member at the time of the

26     crime and that the shooting of the victim was gang related.  This single aggravating factor was

27     sufficient for the trial court to impose the upper term on the gang enhancement.  *Butler*, 528 F.3d

28     at 641-43; *Black*, 41 Cal.4th at 813-15.  The fact that the jury at petitioner's first trial made these

1   factual findings, and not the jury at petitioner's second trial, does not change this result.  What is

2   important is that a jury made these factual findings with respect to this petitioner.  Accordingly,

3   petitioner is not entitled to relief on this claim.

4          **4.  Exclusion of Evidence**

5          Petitioner raises two claims involving the trial court's exclusion of evidence.  First, he

6   claims that the trial court improperly excluded testimony from a defense investigator who was

7   prepared to testify regarding his observations of the area where the shooting occurred.  ECF No.

8   35 at 27-31.  Second, petitioner claims that the trial court improperly excluded evidence of prior

9   bad acts committed by Martinez.  *Id.* at 54-60.  The California Supreme Court summarily denied

10  these claims, which were raised for the first time in a habeas petition filed in that court.  Resp't's

11  Lodg. Docs. 7, 8, lodged July 1, 2013.  Under these circumstances, the reasoned decision of the

12  trial court is the decision this court must consider under AEDPA review.  *Hurles*, 706 F.3d at

13  1046 n.4.

14              **a.      Testimony of Defense Investigator**

15         At his second trial, petitioner testified that after he left his truck to walk to his friend's

16  house, he saw a car drive past him, come to a screeching halt, and then come back towards him.

17  RT at 994.  When the car continued to come at him in reverse, petitioner took out his gun and

18  fired two shots into the car.  *Id.* at 995-97.

19         Detective Johnston testified for the prosecution.  He stated that he had inspected the scene

20  of the crime and he described the conditions of the road and the surrounding area.  He also

21  testified that his observations were inconsistent with petitioner's story that the victim's car came

22  to a screeching halt because, among other things, he did not observe any skidmarks on the road.

23  *Id.* at 872.

24         Investigator Scott Curtis testified for the defense.  CT at 834; RT at 934, *et seq*.  He stated

25  that he visited the scene of the shooting at night and documented that visit with a videotape.  RT

26  at 941-42.  The prosecutor objected to the admission into evidence of this videotape on the

27  grounds of "lack of foundation."  *Id.* at 942.  The trial court sustained the objection.  *Id.*

28  /////

1    Petitioner's trial counsel again attempted to introduce the videotape into evidence, for the purpose

2    of demonstrating the lighting conditions and "how well you can see at the scene." *Id.* The trial

3    court remarked:

4           Counsel, frankly the problem I have with that is you are using a
            video camera. The video camera may or may not be consistent with
5           what one might see in their eyes. It would depend on the light
            sensitivity of the camera you are using, the light sensitivity of the
6           tape you're using.

7    *Id.* at 942-43.

8           Petitioner's counsel then sought to lay a better foundation for admission of the videotape

9    and again requested permission to play it for the jury. The prosecutor objected, stating:

10   This is almost two years after the fact. We don't know if the lighting conditions have changed

11   . . . I don't see how a videotape almost two years later is relevant to the issue of the case." *Id.* at

12   943. Defense counsel asked Mr. Curtis several more questions about the lighting he observed at

13   the scene in 2007, to which the trial court sustained a relevance objection. *Id.* at 944. Mr. Curtis

14   then testified that the roadway might not be susceptible to receiving skid marks. *Id.* at 947.

15   When defense counsel attempted to ask Mr. Curtis questions about a photograph Curtis took of

16   the crime scene, the trial court again sustained a relevance objection.

17          After the verdict in the second trial, petitioner filed a motion for new trial which sought

18   relief based on alleged errors at both of petitioner's trials. *Id.* at 1265. At the hearing on that

19   motion, the trial judge expressed his understanding that the motion for new trial directed at errors

20   in the second trial was "based on the Court's rulings regarding Mr. Curtis; not allowing evidence

21   that you wanted to present from Mr. Curtis." *Id.* at 1266. Petitioner's counsel explained:

22          We are not alleging the rulings were incorrect, however. We are
            alleging that because the evidence was kept out, we did not receive
23          a fair trial, not because the rulings were incorrect, but because we
            suffered prejudice because no investigation was done for the first
24          trial.

25   *Id.* The trial court then stated, "So the argument is that investigation should have been done for

26   the first trial." *Id.* Trial counsel argued, "well, our argument is an investigation should have been

27   done, period, either in 2005 or in 2006. We are alleging that since no investigation was done, we

28   were prejudiced two years later at trial." *Id.* at 1267. The trial court stated, "So really it's a

Motion to Dismiss on due process grounds; it is not a Motion for New Trial." *Id.* Trial counsel agreed, "I think essentially it works to that, yes." *Id.* Counsel explained further:

> But what it comes down to, Your Honor, is there was insufficient defense investigation. This was a denial of due process. This was a denial of effective assistance of counsel. This caused substantial prejudice to Mr. Avila's case in the retrial in that Mr. Avila could not offer evidence relating to the scene of the crime given the very stale nature of this evidence after two years.

> And I would just assert, Your Honor, how can it be said that a fair trial was had when the Defendant was deprived of such a basic right: the right to present evidence in his own defense relating to the scene of the crime?

*Id.* at 1268. The prosecutor responded to defense counsel's argument as follows:

> . . . I think, to understand his argument, is basically the reason why he didn't get a fair trial for the second trial was because this video was not able to be introduced. And he premises his argument on the fact it's because it's so old.

> He assumes the reason he could not admit the video, that it was 20 months post-incident. And I don't think he can make that assumption, either.

> I think, going back to the Court's ruling, from what I understand of it, it was a lack-of-foundation objection that was sustained, and that could entail many things. But certainly it wasn't just "this is inadmissible because it's too old." There are many factors that could come into the Court's ruling on lack of foundation. Was the lighting the same? Were the conditions the same? Were the People giving the test experts? And you can go on and on and on as to why the video didn't come in.

> In other words, even if he could have come in 18 months earlier with a similar video, the Court could have made a similar ruling. "This was not at the same time of day." You don't have an expert." There are just many reasons why this video was not admissible.

> And just for him to say, "Oh, it's only because it's 20 months later, and just if someone could have done this earlier," well, even if the previous attorney would have tried this earlier, it would have not been the same time as the crime. He would have had to meet the same foundational requirements that Mr. Irving had to meet and he was unable to do. It's my understanding he didn't even attempt to present foundational issues in regards to videos. So that's why there are so many reasons why the Court could have kept that video out.

*Id.* at 1269-70.

/////

26

1    The trial court denied petitioner's motion for new trial, ruling as follows:

2        For the most part, I agree with the statements of [the prosecutor].
         The problem with the evidence that Mr. Curtis was going to present
3        was not simply the lapse of time.  It is fairly elemental that even if
         photographs are taken or tapes are taken 20 days after the incident,
4        there still has to be a foundation that the conditions are the same at
         the time that the photographs or tape were made as they were at the
5        time that the incident occurred.

6        The problem with Mr. Curtis's testimony also was that – and it's
         really demonstrated by the motion – there are things he intended to
7        testify about that he simply didn't have the qualifications to testify
         about.  For example, he didn't appear to be an expert in skidmarks.
8        Some of his conclusions the Court would take issue with that are in
         his declaration, but I don't think I need to do that at this juncture.
9

10       The problem was not just simply the lapse of time.  The problem
         was that the foundational elements were not laid.  And I cannot
11       conclude from what's presented to me that those elements could not
         have been made.  They perhaps could have been laid in this case,
12       but they weren't.

13       So to conclude that somehow just because there had been no
         investigation at the time, that the Defendant couldn't present the
14       evidence that Mr. Curtis sought to present, at least that which was
         admissible, that any prejudice was laid upon the Defendant because
15       of any prior lack of investigation.

16       To the extent it's a Motion for New Trial, it is denied, because a
         new trial wouldn't accomplish anything.  And to the extent it is a
17       Motion to Dismiss, it is denied.

18    *Id.* at 1272.

19        In the petition before this court, petitioner argues that the testimony of defense

20    investigator Curtis was needed to counter the testimony of prosecution witness Detective

21    Johnston, described above.  ECF No. 35 at 27.  Petitioner directs the court's attention to a

22    declaration filed by Mr. Curtis in support of petitioner's motion for new trial, in which Curtis

23    declares that he was prepared to testify to the following facts: (1) he inspected the scene of the

24    crime and found no skidmarks on bare road surfaces, which caused him to doubt whether the

25    roadway's surface was receptive to skid marks at all; (2) his photographs demonstrated that there

26    were skid-marks on the painted surfaces of the roadway, which abruptly terminated at the bare

27    roadway; (3) at night, the scene of the crime was brightly illuminated; and (4) because of this

28    illumination, petitioner would have been visible to the occupants of the victim's car but the

27

1   victim's car would have been silhouetted and difficult to see from petitioner's perspective.  CT at

2   982-83.  Petitioner argues that he was deprived of the opportunity to present this evidence

3   because his trial counsel at the first trial failed to conduct sufficient investigation and was

4   operating under a conflict of interest.  ECF No. 35 at 38.

5          The exact nature of petitioner's claims before this court are difficult to decipher.  To the

6   extent petitioner is claiming that his first trial counsel rendered ineffective assistance in failing to

7   obtain photographs and a videotape of the crime scene, similar to the evidence offered by counsel

8   at petitioner's second trial, his claim should be denied for lack of prejudice.  As explained by the

9   trial court, photographs and videotape, regardless of when they are generated, are not necessarily

10  representative of the actual scene and are therefore irrelevant.  The court also notes that Mr.

11  Curtis was allowed to testify at the second trial that the roadway at the scene of the shooting

12  might not have been susceptible to receiving skid marks.  This testimony served to explain why

13  Detective Johnston's observation that he did not see any skidmarks at the scene did not

14  necessarily impeach petitioner's trial testimony that the victim's car came to a screeching halt.  In

15  short, petitioner has failed to show that further investigation of the crime scene by petitioner's

16  first counsel would have turned up evidence helpful to petitioner's defense.

17         To the extent petitioner is arguing the trial court's evidentiary ruling excluding Mr. Curtis'

18  testimony about his observations of the scene of the crime violated his right to due process, he is

19  not entitled to relief.  The United States Supreme Court has not "squarely addressed" whether a

20  state court's exercise of discretion to exclude testimony violates a criminal defendant's right to

21  present relevant evidence.  *Moses v. Payne*, 555 F.3d 742, 758-59 (9th Cir. 2009).  Accordingly,

22  the state courts' rejection of petitioner's claim that the trial court unlawfully excluded the

23  testimony of Mr. Curtis is not contrary to or an unreasonable application of clearly established

24  United States Supreme Court precedent and may not be set aside.  *Id.  See Wright v. Van Patten*,

25  552 U.S. 120, 126 (2008) (per curiam) (relief is "unauthorized" under Section 2254(d)(1) when

26  the Supreme Court's decisions "given no clear answer to the question presented, let alone one in

27  [the petitioner's] favor," because the state court cannot be said to have unreasonably applied

28  clearly established Federal law).  *See also Anguiano v. Morales*, No. C 98-4751 SI(PR), 2000 WL

1  630870 at *9 (N.D. Cal. May 2, 2000) (trial court's exercise of discretion under Cal. Evid. Code

2  § 1252 to exclude untrustworthy evidence did not violate defendant's right to present a defense).[4]

3        For these reasons, petitioner is not entitled to relief on his claims regarding the exclusion

4  of the testimony of investigator Curtis.

5                **b.**      **Bad Acts by Martinez**

6        The state court record reflects that on October 24, 2007, the prosecutor filed a motion in

7  limine seeking to exclude evidence of Victor Martinez's prior bad acts; specifically an assault by

8  Martinez against Samuel Ayala, which occurred approximately one week prior to the shooting in

9  this case.  CT at 656-59.  The prosecutor argued that the prior assault on Ayala was irrelevant

10  because petitioner did not know about the assault.  Therefore, the evidence could not support

11  petitioner's defense that he fired at the vehicle because he was afraid of Martinez.  The prosecutor

12  also argued that the evidence was inadmissible character evidence.  *Id.* at 657-58.  In his

13  opposition to the motion, petitioner's defense counsel argued the evidence was admissible

14  pursuant to Cal. Evid. Code § 1103 (admission of character evidence of crime victim to prove

15  conduct).

16        During argument on the motion in limine, petitioner's trial counsel stated that the

17  evidence "corroborates [petitioner's] account that he was jumped an hour previous to the

18  shooting."  RT at 534.  The court responded, "So the only way that evidence would come in is

19  once your client testified about the incident a week prior.  Otherwise there is nothing to

20  corroborate."  *Id.*  Petitioner's trial counsel responded, "I suppose."  *Id.*  The parties agreed to

21  "just wait and see how [petitioner] testifie[d] and then decide whether the evidence is

22

23         [4]   In the past, the Ninth Circuit applied a "balancing test" to assess the constitutionality
of a trial court's discretionary decision to exclude evidence.  *See Chia v. Cambra*, 360 F.3d 997,

24  1003-04 (9th Cir. 2004); *Miller v. Stagner*, 757 F.2d 988, 994–95 (9th Cir. 1985).  However, in
*Moses*, the Ninth Circuit concluded that the *Miller* balancing test "is a creation of circuit law,"

25  rather than clearly established Supreme Court precedent, for purposes of Section 2254(d)(1).  555
F.3d at 759–60.  Therefore, the *Miller* test should not be used in federal habeas review of a

26  challenge to a state court's exercise of discretion to exclude testimony pursuant to a state
evidentiary rule affording such discretion.  *Id.*  "The AEDPA does not permit [a habeas court] to

27  rely on [the Miller] balancing test to conclude that a state trial court's exclusion of evidence . . .
violated clearly established Supreme Court precedent."  *Id.* at 760.

28

1  admissible." *Id.*  Petitioner's counsel did not seek to introduce evidence of Martinez's prior bad

2  acts after petitioner testified.

3       In his petition before this court, petitioner claims that evidence of Mr. Martinez's recent

4  attack against Ayala was admissible pursuant to Cal. Evid. Code § 1103(a) in order to prove the

5  character of Martinez, who was also a victim of the shooting.  ECF No. 35 at 54.  However, any

6  claim that the trial court's evidentiary ruling violated the California Evidence Code is not

7  cognizable in this federal habeas action.  *See Estelle*, 502 U.S. at 67-68 (federal habeas relief not

8  available for errors in interpretation or application of state law); *Jammal v. Van de Kamp*, 926

9  F.2d 918, 919-20 (9th Cir. 1991) (petitioner may not challenge evidentiary ruling on ground that

10  it violated state's evidence code; failure to comply with state rules of evidence does not warrant

11  federal habeas relief).

12       Petitioner also claims that the trial court's exclusion of this evidence violated his right to

13  due process because the evidence was necessary to support both his claim that he was attacked by

14  Martinez and the other Surenos earlier on the day of the crime and his defense that he believed he

15  had to shoot at the victim's car to defend himself.  ECF No. 35 at 55-58.  This claim lacks a

16  factual basis and should therefore be denied.  As explained above, the trial court did not exclude

17  evidence of Martinez's prior assault.  Rather, the parties agreed to wait until later in the trial, after

18  petitioner had testified, to determine whether the evidence was admissible.  Petitioner's trial

19  counsel did not seek to introduce the evidence after petitioner testified.  Therefore, the trial judge

20  had no occasion to exclude it.  In any event, because the United States Supreme Court has not

21  "squarely addressed" whether a state court's exercise of discretion to exclude testimony violates a

22  criminal defendant's right to present relevant evidence, petitioner cannot show that the state

23  court's denial of this claim was contrary to or an unreasonable application of federal law.  *Moses*,

24  555 F.3d at 758-59 (9th Cir. 2009).

25       For the foregoing reasons, petitioner is not entitled to relief on this claim.

26  **5.  Notice of Firearm Enhancement**

27       In his next ground for relief, petitioner claims that the trial court's decision to correct the

28  Abstract of Judgment to reflect the accurate firearm enhancement statute violated his Sixth

Amendment right to notice of the charges against him and prevented him from presenting a defense to the enhancement.  ECF No. 35 at 31-32.  The California Supreme Court summarily denied this claim, which was raised for the first time in a habeas petition filed in that court.  Resp't's Lodg. Docs. 7, 8, lodged July 1, 2013.  Under these circumstances, the reasoned decision of the trial court is the decision this court must consider under AEDPA review.  *Hurles*, 706 F.3d at 1046 n.4.

The information in this case alleged in Count I that petitioner committed the murder of Alvaro Castillo.  CT at 20.  The information also alleged as to Count I that petitioner personally and intentionally discharged a handgun, which proximately caused great bodily injury and death to the victim, within the meaning of Cal. Penal Code § 12022.53(d), and that he personally and intentionally discharged a handgun within the meaning of Cal. Penal Code §§ 12022.53(b), 12022.53(c), and 12022.5(a)(1).  *Id.* at 20-21.  On November 30, 2007, as the trial court was reading the jury instructions, the following colloquy occurred:

> It is alleged in Count I that the Defendant intentionally and personally discharged a firearm, and proximately caused death to a person during the commission of the crime charged.
>
> If you find the Defendant guilty of the crime thus charged –
>
> Counsel, the instruction didn't include the lesser, but I believe it would apply to the lesser.  Any disagreement?
>
> MS. WOODS: (the prosecutor): No, sir.
>
> MR. IRVING: (petitioner's trial counsel): No, Your Honor.
>
> The trial court went on to instruct the jury, as follows:
>
> If you find the Defendant guilty of the crime charged or of the lesser offense, you must determine whether the Defendant intentionally and personally discharged a firearm and caused a death to a person in the commission of that crime.
>
> The word "firearm" includes any device designed to be used as a weapon from which there is expelled through a barrel a projectile by the force of any explosion or from any other form of combustion.
>
> The term "intentionally and personally discharged a firearm," as used in this instruction, means that the defendant must have intentionally discharged it.

1
2
3

A proximate cause of great bodily injury or death is an act or omission that sets in motion a chain of events that produces as a direct, natural or probable consequence of the act or omission the great bodily injury or death, and without which the great bodily injury or death would not have occurred.

4
5

The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.

6   RT at 1120-22.  The jury found petitioner guilty of voluntary manslaughter as a lesser offense of

7   the murder charged in Count I and found true the allegation that petitioner personally and

8   intentionally discharged a firearm which proximately caused the death of Alvaro Castillo, within

9   the meaning of Cal. Penal Code § 12022.53(d).  CT at 911, 912.

10      On January 9, 2008, the prosecutor filed a document entitled "Request for Cure of

11  Incorrectly Cited Enhancement Finding on Verdict Form."  *Id.* at 933.  The prosecutor noted that

12  the verdict form signed by the jury incorrectly listed Cal. Penal Code § 12022.53, which does not

13  apply to a finding of voluntary manslaughter.  *Id.*  She argued that the correct Penal Code section

14  was § 12022.5.  *Id.*  The prosecutor summarized her arguments as follows:

15
16
17
18

In the instant case, the jury returned a verdict of personal use of a firearm, although the wrong penal code section was cited on the verdict form.  Since the section the jury returned the verdict on cannot be applied to voluntary manslaughter, the People hereby request the judge cure the technical defect, and sentence the defendant under the correct special allegation section of Penal Code Section 12022.5, which does apply to voluntary manslaughter.

19  *Id.* at 934.  Petitioner opposed the prosecutor's motion, arguing that he had "ventured upon trial

20  and argument without sufficient notice that by successfully defending the murder count, he would

21  nonetheless face a firearm enhancement exposure in addition to the penalty exposure under the

22  lesser-included-offense of voluntary manslaughter."  *Id.* at 956-59.

23      The trial court denied the prosecution's request to cure the verdict form, but directed that

24  the Abstract of Judgment "show a finding under 12022.5, not 12022.53."  RT at 1283.  The judge

25  explained:

26
27
28

Before we proceed to sentencing, there was an issue that was created regarding the special allegation.  It is understandable that the Probation Officer would not know of the Court and counsel's discussions both on and off the record regarding the special allegations.

> On and off the record we discussed the fact that the People had charged a 12022.5 personal use special allegation.   We discussed the fact that 12022.5 was the only one that would apply to the lesser-included; that 12022.53 would not apply.
>
> We agreed that rather than give an instruction regarding 12022.5, that we could just give the instruction regarding 12022.53, because it included all of the elements that the jury would have to find regarding the 12022.5.
>
> I don't think we specifically discussed the jury verdict.   However, what's important is that the jury make the appropriate findings.   They don't have a Penal Code back there.   I don't think it was significant to them that there was the number "12022.53" on the verdict form.   The jury made all of the findings necessary for a finding of truth under 12022.5.   The People had charged 12022.5.   The Defendant clearly was on notice that 12022.5 was one of the allegations, and was on notice that that was the only one that would apply to the lesser-included offense.
>
> Given that fact, the Court doesn't believe that any alternative verdict needs to be found.   And the Court is of the opinion that the jury appropriately made a finding to the allegation that was alleged by the People under 12022.5.

*Id.* at 1275-76.  Petitioner's trial counsel declined the opportunity to be heard further on this issue.

*Id.* at 1276.

Petitioner claims that the above-described events violated his right to notice of the charges against him.  The Sixth Amendment guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the charges against him in order to permit adequate preparation of a defense.  *Cole v. State of Ark.*, 333 U.S. 196, 201 (1948).  *See also Strickland v. Washington*, 466 U.S. 668, 685 (1984) ("a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding"); *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("[A] conviction upon a charge not made . . . constitutes a denial of due process"); *Lincoln v. Sunn*, 807 F.2d 805, 812 (9th Cir. 1987) (the Sixth Amendment guarantees a criminal defendant a fundamental right "to be informed of the nature and the cause of the accusation").  The notice provision of the Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment and is applicable to the states.  *Gautt v. Lewis*, 489 F.3d 993, 1003 (9th Cir. 2007).

/////

33

For the reasons described by the trial judge, the charging document gave petitioner sufficient notice of the firearm enhancement to allow him to prepare a defense to that allegation. Petitioner does not explain how he would have defended the case differently had the correct statute been listed on the verdict form. Indeed, the information charged petitioner with a firearm enhancement under Cal. Penal Code § 122022.5 in connection with the crime of murder, thereby putting him on notice that he should be prepared to defend against that allegation. The decision of the state court rejecting petitioner's claim in this regard is not contrary to or an unreasonable application of federal law and is not based on an unreasonable determination of the facts in the state court proceeding. Accordingly, petitioner is not entitled to relief on this claim.

### 6. Statements to Police

In his next ground for relief, petitioner claims that the trial court should have suppressed his statements to police because his invocation of the right to remain silent was not scrupulously honored by the interrogating police officer. ECF No. 35 at 35-45. The California Supreme Court summarily denied this claim, which was raised for the first time in a habeas petition filed in that court. Resp't's Lodg. Docs. 7, 8, lodged July 1, 2013. Under these circumstances, the reasoned decision of the trial court is the decision this court must consider under AEDPA review. *Hurles*, 706 F.3d at 1046 n.4.

The state court record reflects that during the first trial, the prosecutor presented a transcript of petitioner's police interrogation to the jury and played a portion of the videotape of the interrogation. RT at 52-54. The next day, before the remainder of the videotape was played for the jury, petitioner's trial counsel made an oral motion to exclude petitioner's statements to police, arguing that the interrogating officers disregarded petitioner's clear invocation of his right to remain silent. *Id.* at 73-74. The prosecutor objected to the motion on the grounds that petitioner did not invoke his right to remain silent, but was only expressing "momentary frustration." *Id.* at 78-79. The trial court denied the motion to suppress, ruling as follows:

> Well, it is a difficult issue, and particularly difficult at short notice.
> I wish I had more time to consider it, particularly given that it is a
> rather important issue.

/////

> However, the Defendant's two statements, and I think they have to be read together, are: "No, I'm done talking here," and then he says, "I'm done talking to you." Those are somewhat similar to a statement that was made in *People v. Riva*, 1 Cal.App.4th, 981 at 987, where the Defendant said, "I don't want to say anything else right now." It's similar just in the sense that they are not clear-cut statements, "I want to remain silent."
>
> The statement, "No, I'm done talking here" at least can suggest that he is willing to talk somewhere else. "I'm don't talking to you" made in the context of "I'm done talking here" is also equivocal, and may just mean that he is done talking at that particular moment, that he needs to rest, that he is tired, for whatever reason, or it may mean that he is willing to talk to someone else, but not that particular person. The Court finds that the statements were not an invocation of the right to remain silent.
>
> Furthermore, while the Court doesn't have a foundation for the later statements, at least assuming at this point, even if this statement to Detective Allison is in violation, the Court also would note in *People v. Riva*, the factors that should be considered in a later interview, there is not a per-se rule that a later statement violates the Defendant's *Miranda* rights or is involuntary. Under the totality of the circumstances, what is appropriate to look at is whether the interview was at a different location, which may be particularly on point here since there is a statement made that he doesn't want to talk here.
>
> The Court also considers whether it was different officers, whether *Miranda* was given on the second occasion, whether or not the totality of the circumstances appeared to support voluntariness. And at least based upon the offer of proof that I have, it would seem to be the case so that if there is no prior *Miranda* violation, clearly the second two statements would be admissible. If there is, they would be admissible because they are sufficiently attenuated by the passage of time, two to five days, and the other factors. The motion is denied.

*Id.* at 81-82.

Prior to the second trial, petitioner filed a written motion to suppress his statements to police. CT at 324-77. The trial court conducted an evidentiary hearing on the motion, at which Detective Allison testified. *Id.* at 545-51. The trial judge also watched the videotaped interview. *Id.* at 554-55, 558-59. The trial court denied the motion to suppress in a written ruling. The court reasoned as follows:

> In bringing this motion, Defendant asserts that statements he made to Detective Allison and District Attorney Gregg Cohen, on or about November 5, 2005, should be excluded as violative of his right to remain silent. It is of some significance to first note that Defendant does not assert a violation of his right to counsel.

35

Defendant also seeks to suppress statements made in a second interview conducted by two sheriff's detectives, on or about November 10, 2005.

It is clear from the evidence that Defendant was properly advised of his rights, pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Prior to that, Defendant attaches some significance to the fact that Defendant was sleeping in the interview room for something in excess of an hour. The Court has observed a DVD of Defendant in the interview room. He appears, at times, to be sleeping. In fact, for a large portion of that time period, he appears to be sleeping. The Court does not attach great significance to this fact, but does point out, first, that during times that Defendant is sleeping, how long he is actually there is of little significance, because he is sleeping. Secondly, it would demonstrate that Defendant was not unduly stressed, or intimidated by his situation.

The critical portion of the interview, and really the critical portion to this Court's determination of whether Defendant's rights were violated, and whether his statements were involuntary, comes at a point which is reflected in the transcript at page 781. Defendant states, "No, I'm done talking here." Detective Allison responds, "What was that?" Defendant says, "I'm done talking to you." Detective Allison then goes on to briefly indicate, that's a mistake, that they're talking about his future and that he is going to leave him alone to think about that. Defendant is then left alone for approximately 20 minutes. During that 20 minutes, Defendant again seems fairly relaxed, may have been sleeping, and does not give any indication of being agitated or distressed. After approximately 20 minutes, Detective Allison returns to the room, conducts conversation about various topics, and, at some point, it is not entirely clear when, District Attorney Gregg Cohen enters the room. As far as the Court can tell from the DVD, Mr. Cohen is never identified or introduced. Ultimately, the interview continues. Although the Court is digressing, in reviewing the DVD and the transcript, the Court does not find that Defendant was ever offered any promise of leniency, or that he reasonably could have concluded that, my making admissions, he was being given some indication that the charges against him would be lessened. It is true, however, that during the interview, Detective Allison sought to leave the impression that it would be best for Defendant to make admissions. However, if anything, encouragement by Detective Allison would have suggested to Defendant that he should make statements which excused or mitigated his actions.

As Defendant accurately points out, *Michigan v. Mosley* (1975) 423 U.S. 96 stands for the proposition that a defendant's expression of his right to remain silent must be "scrupulously honored." That honoring is triggered when the defendant indicates "he wishes to remain silent." [*Michigan v. Mosley, supra*, 320.] So, for example, the rule applied, in *Mosley*, when the defendant indicated he did not want to answer any questions about the robberies. [*Michigan v. Mosley, supra*, 317.] The Defendant, in this case, however, did not ever indicate that he wished to remain silent, or that he did not want

to talk about the events that had occurred, which ultimately led to the charges in this case.

Defendant made two ambiguous statements.  The first, "I'm done talking here," the second, "I'm done talking to you."  Neither statement expresses an intent to remain silent, or a refusal to answer further questions.  Literally considered, it is an indication that he just doesn't want to talk in that location, and he just doesn't want to talk to that person.  This situation is more akin to several California cases.  For example, in *People v. Riva* (2003) 112 Cal.App.4th 981, a defendant stated, "I don't want to say anything else right now." [*People v. Riva, supra,* 987.]  After approximately a one-hour period, the interrogation continued, and although the Appellate Court indicated a readvisal of *Miranda* rights would have been advisable, it was not required under those circumstances.  The Court, in *Riva*, found that the statements were admissible.  In *People v. Jennings* (1988) 46 Cal.3d 963, the defendant indicated, "I'll tell you something right now.  You're scaring the living shit out of me.  I'm not going to talk.  You have got the shit scared out of me," and, "I'm not saying shit to you no more, man.  You, nothing personal man, but I don't like you.  You're scaring the living shit out of me . . . That's it.  I shut up."  The Supreme Court concluded that the defendant had not invoked his right to remain silent, and that, therefore, subsequent statements were admissible.  In making that ruling, the Supreme Court indicated, among other things, that after viewing the tape and observing defendant's demeanor during and after the statements, and considering their context, it reflected only momentary frustration and animosity towards the officer.  In a prior case, *In re Joe R.* (1980) 27 Cal.3d 496, the minor, in a delinquency case indicated, "That's all I have to say."  The officer replied, "Is that all you want to tell us?"  The subject replied, "That's all I want to tell you."  The Supreme Court found this was not an indication of the right to remain silent, but was more akin to the suspect stating, "That's my story and I'll stick to it."

In this case, it is the Court's view that the situation with Mr. Avila is very similar.  Defendant does not reflect an intention to remain silent about the charges.  Defendant rather reflects some unwillingness to talk at a particular point in time, or to a particular person, but does not indicate an insistence on his right to remain silent.  The response of Detective Allison, wherein he indicates not talking is a mistake, is probably inappropriate.  However, in viewing the DVD, it is important to note that Detective Allison was not aggressive, was not loud, was not forceful, when he made those statements.  They are made in a rather matter-of-fact indication to Defendant that he is making a mistake.  Additionally, if one watches the DVD, before the statements are made, during the approximate 20 minute period during which Defendant seems rather relaxed, and the interaction of Defendant and Detective Allison, thereafter, one cannot conclude that Defendant felt intimidated, or overly pressured, by the statements of Detective Allison.  In fact, under the circumstances, Defendant, who previously had significant experience with the criminal justice system, appeared to be rather at ease.

37

1
2
3
4
5

> Consequently, as to the first interview, this Court finds that Defendant did not assert his right to remain silent. The interview did not violate any rights Defendant may have under *Miranda v. Arizona, supra*, and the statements of Defendant appear to be voluntary.  Based upon this finding, and the fact that Defendant was properly admonished of his rights under *Miranda v. Arizona, supra*, in the second interview, the Court finds that Defendant's statements in the second interview are admissible.

6    *Id.* at 728-31.

7        In *Miranda v. Arizona*, the United States Supreme Court held that "[t]he prosecution may

8    not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of

9    the defendant unless it demonstrates the use of procedural safeguards effective to secure the

10   privilege against self-incrimination." 384 U.S. at 444.  To this end, custodial interrogation must

11   be preceded by advice to the potential defendant that he or she has the right to consult with a

12   lawyer, the right to remain silent and that anything stated can be used in evidence against him or

13   her.  *Id.* at 473-74.  These procedural requirements are designed "to protect people against the

14   coercive nature of custodial interrogations."  *DeWeaver v. Runnels*, 556 F.3d 995, 1000 (9th Cir.

15   2009).  Once *Miranda* warnings have been given, if a suspect makes a clear and unambiguous

16   statement invoking his constitutional rights, "all questioning must cease."  *Smith v. Illinois*, 469

17   U.S. 91, 98 (1984).  *See also Miranda*, 384 U.S. at 473-74; *Michigan v. Mosley*, 423 U.S. 96, 100

18   (1975); *DeWeaver*, 556 F.3d at 1001.

19       The admission of evidence obtained in violation of *Miranda* is subject to harmless error

20   analysis.  *Arizona v. Fulminante*, 499 U.S. 279, 295-96 (1991).  A state court's constitutional

21   error is harmless unless the violation had a "substantial and injurious effect or influence on the

22   jury's verdict."  *Calderon v. Coleman*, 525 U.S. 141, 147 (1998).  *See also Fry v. Pliler*, 551 U.S.

23   112, 114 (2007); *Jackson v. Giurbino*, 364 F.3d 1002, 1010 (9th Cir. 2004) (applying harmless

24   error test to improper admission of statements made during police interrogation); *Tolliver v.*

25   *Sheets*, 594 F.3d 900, 924 (6th Cir. 2010) (same).

26       Assuming *arguendo* that the trial court erred in admitting  petitioner's statements to police

27   after he invoked his right to remain silent by stating, "I'm done talking here" and "I'm done

28   talking to you," this court concludes that any error was harmless in the context of this trial.

38

1    Petitioner took the stand in his defense and testified about the events on the night of the shooting.

2    His testimony was consistent with his statements to Detective Allison during his interrogation.

3    RT at 975-1003.  Indeed, largely because of petitioner's explanation about the circumstances

4    surrounding the shooting, he was acquitted of the murder charge.  Further, there was no dispute

5    that petitioner was the person who shot the victim.  *See Brecht v. Abrahamson*, 507 U.S. 619, 639

6    (1993) (improper reference to petitioner's invocation of his right to remain silent harmless where,

7    among other things, the government's evidence of guilt was "if not overwhelming, certainly

8    weighty.").  Under the circumstances of this case, the admission into evidence of petitioner's

9    statements to police would not have had a "substantial and injurious effect or influence in

10   determining the jury's verdict." *Brecht,* 507 U.S. at 637.  Accordingly, petitioner is not entitled

11   to relief on this claim.

12          **7. Brady Claim**

13          Petitioner claims that the prosecutor at both his first and second trials violated his right to

14   a fair trial in failing to disclose exculpatory evidence to the defense, in violation of *Brady v.*

15   *Maryland*, 373 U.S. 83 (1963).  ECF No. 35 at 46-53.  He states that at his first trial the

16   prosecution failed to disclose that the trailer park resident heard what appeared to be a fight on the

17   night petitioner said he was attacked by Martinez and several other Surenos.  He argues this

18   evidence would have substantiated his claim that he was attacked shortly before the shooting at

19   issue here.  Second, petitioner states that at his first and second trials the prosecution failed to

20   disclose the statement of a confidential informant that Mr. Martinez often carried a handgun.  *Id.*

21   Petitioner argues this statement would have supported his testimony that Martinez assaulted him

22   with a handgun shortly before the shooting at issue here.  *Id.*  Petitioner also argues that the

23   prosecution unfairly presented "testimony in direct contradiction to this evidence." *Id.* at 46-47.

24   Specifically, he notes Phil Johnston testified that Martinez would not likely carry a firearm

25   because he was a felon.  Petitioner also notes the prosecutor argued that there was no evidence to

26   support petitioner's story that he was attacked at the trailer park but was able to escape because

27   someone turned on their porch light.  *Id.* at 47.

28   /////

1        The California Supreme Court summarily denied these claims, which were raised for the

2   first time in a habeas petition filed in that court.  Resp't's Lodg. Docs. 7, 8, lodged July 1, 2013.

3   Under these circumstances, the reasoned decision of the trial court is the decision this court must

4   consider under AEDPA review.  *Hurles*, 706 F.3d at 1046 n.4.

5        In petitioner's second motion for a new trial, he argued that the prosecutor committed

6   *Brady* error in failing to disclose to the defense the information described above.  CT at 232-36.

7   He argued that, even though the first jury was unable to reach a verdict on the murder count, he

8   was still prejudiced by the prosecutor's failure to turn over this information because "he was

9   undermined in terms of both his credibility as a witness and prejudiced in terms of his own

10   character before the jury."  *Id.* at 235.  In opposition, the prosecutor argued that the information in

11   her possession from the resident of the trailer park at the time of the first trial was inconclusive

12   and vague and did not rise to the level of *Brady* material.  *Id.* at 378.  With respect to the

13   statement by the confidential informant, the prosecutor argued that the information had been

14   turned over to the defense.  *Id.* at 379-80.

15        The trial court denied petitioner's motion for new trial.  With respect to the *Brady*

16   allegations, the court ruled as follows:

> 17   Regarding the *Brady* violations, it is not clear from the motion that,
> 18   in fact, there was a *Brady* violation.  If there was, it is not clear to
> the Court that it had any substantive effect on the verdict.

> 19   Furthermore, this other witness, it is not clear that at the time of the
> 20   trial that the information that the Defendant now alleges was in the
> hands of the People.  Furthermore, I have read the statements of
> 21   that witness, and it would be fair to say there her statements are
> somewhat ambiguous and not clear.

22   RT at 514.

23        The United States Supreme Court has held "that the suppression by the prosecution of

24   evidence favorable to an accused upon request violates due process where the evidence is

25   material either to guilt or to punishment, irrespective of the good faith or bad faith of the

26   prosecution."  *Brady*, 373 U.S. at 87.  *See also Youngblood v. West Virginia*, 547 U.S. 867, 869

27   (2006) ("A *Brady* violation occurs when the government fails to disclose evidence materially

28   favorable to the accused").  There are three components of a *Brady* violation: "[t]he evidence at

1   issue must be favorable to the accused, either because it is exculpatory, or because it is

2   impeaching; the evidence must have been suppressed by the State, either willfully or

3   inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82

4   (1999). *See also Aguilar v. Woodford,* ___ F.3d ___, 2013 WL 3870727 (9th Cir. July 29, 2013).

5   In order to establish prejudice, petitioner must demonstrate that "'there is a reasonable

6   probability' that the result of the trial would have been different if the suppressed documents had

7   been disclosed to the defense." *Stickler,* 527 U.S. at 289.

8          In light of these standards, petitioner has failed to demonstrate that the prosecutor violated

9   his right to due process in failing to turn over *Brady* material.  Petitioner was acquitted of the

10  murder at the first trial, and it does not appear the information from the trailer park resident would

11  have been particularly relevant to the gang enhancement allegations.  With respect to the

12  confidential informant, it appears that the information was disclosed to the defense at both trials.

13  There is no evidence before the court that the prosecution at either trial failed to discover material

14  exculpatory evidence to the defense.  Accordingly, petitioner is not entitled to relief on this claim.

15  **III. Conclusion**

16         For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

17  application for a writ of habeas corpus be denied.

18         These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within fourteen days after service of the objections.  Failure to file

24  objections within the specified time may waive the right to appeal the District Court's order.

25  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

26  1991).  In his objections petitioner may address whether a certificate of appealability should issue

27  in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules

28  /////

1   Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

2   when it enters a final order adverse to the applicant).

3   DATED:  February 11, 2014.

4

5                                          EDMUND F. BRENNAN
                                           UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42